**Affirmed and Memorandum Opinion filed July 2, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00187-CV

### HERITAGE OPERATING, L.P., Appellant

### V.

### BARBER HILL INDEPENDENT SCHOOL DISTRICT, CHAMBERS COUNTY, AND THE CITY OF MONT BELVIEU, Appellees

**On Appeal from the 344th District Court**
**Chambers County, Texas**
**Trial Court Cause No. CV24078**

## M E M O R A N D U M   O P I N I O N

Barber Hill Independent School District, Chambers County, and the City of Mont Belvieu ("the Taxing Units") sued Heritage Operating, L.P. ("Heritage") to recover delinquent and unpaid taxes. In one issue, Heritage appeals the trial court's judgment granting summary judgment in favor of the Taxing Units and denying Heritage's motion for summary judgment. We affirm.

## I. BACKGROUND

Heritage owns personal property in Chambers County, Texas, consisting of inventory stored in an underground storage facility referred to as the "Mont Belvieu Storage Facility." The record indicates that Heritage paid taxes on the property for the 2003-2007 tax years, with the exception of 2004. For that one year, Heritage claimed it did not receive notice of appraisal.

The Taxing Units sued Heritage for the 2004 taxes it claimed were delinquent, seeking over $800,000 in taxes, penalties and interest. Heritage answered, filing "special pleas" and a counterclaim seeking a declaration that the 2004 tax was void because the Taxing Units did not add the previously-omitted property pursuant to Section 25.21 of the Texas Tax Code. *See* Tex. Tax Code Ann. § 25.21 (West, Westlaw through 2015 R.S.).

Heritage filed both a no-evidence and a traditional motion for summary judgment to which the Taxing Units responded. The trial court denied the two motions. Heritage filed a third and fourth no-evidence and traditional motion for summary judgment, to which the Taxing Units responded. The Taxing Units also moved for traditional motion for summary judgment. Heritage objected to the affidavits supporting the Taxing Units' traditional motion and responded.

The trial court granted the Taxing Units' motion for summary judgment and, two months later, signed a "final summary judgment" granting the Taxing Units's traditional motion for summary judgment, incorporating its denial of all motions filed by Heritage and denying all other relief.

## II. SUMMARY JUDGMENTS

In one issue, Heritage contends the trial court erred (1) in granting the Taxing Units' traditional motion for summary judgment because Heritage rebutted

the presumption within Texas Tax Code Section 33.47(a), and (2) in denying Heritage's motion for summary judgment because Heritage did not receive notice as required by Texas Tax Code Section 25.19. *See* Tex. Tax Code Ann. §§ 25.19, 33.47(a) (West, Westlaw through 2015 R.S.). In its appellate brief, Heritage does not identify which of its four motions the trial court erred in denying. Heritage also asserts that "the grounds upon which Heritage sought summary judgment and the grounds upon which Heritage defended against the Taxing Units' motion for summary judgment are interrelated," and it addresses collectively the grounds in the parties' motions and responses.

## A. Standard of Review

When parties file cross-motions for summary judgment and the trial court has granted one and denied the other, we may consider the propriety of the grant, as well as the denial, of both motions and affirm or reverse accordingly. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005) (citing *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000)); *Cullins v. Foster*, 171 S.W.3d 521, 529 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 729 (Tex. App.—Houston [14th Dist.] 2003, no pet.)). If the facts are undisputed and we consider a question of law, we will affirm the judgment or reverse and render. *Cullins,* 171 S.W.3d at 530.

When both parties move for summary judgment, we must review the summary-judgment evidence presented by both sides to determine the questions presented, and render the judgment the trial court should have rendered. *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010); *Expro Americas LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 919 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). In the case of cross-

motions for summary judgment, each party must establish it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).

A plaintiff moving for traditional summary judgment must conclusively establish all essential elements of its claim. *Cullins*, 171 S.W.3d at 530 (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986)). If the movant establishes a right to summary judgment, the nonmovant bears the burden to present evidence raising an issue of material fact. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000).

We review *de novo* a summary judgment. *See Ferguson v. Bldg. Materials Corp. of Am.,* 295 S.W.3d 642, 644 (Tex. 2009) (per curiam). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence*, 164 S.W.3d at 661.

**B.  Motions for Summary Judgment**

The Taxing Units filed a traditional motion for summary judgment relying on Texas Tax Code Section 33.47(a). *See* Tex. Tax Code Ann. § 33.47(a). As supporting evidence, they attached certified copies of the delinquent tax rolls identifying the property taxed, the amount of tax imposed, the correct amount of the tax alleged to be delinquent and confirmation that the taxes were not paid. Thus, the Taxing Units established a prima facie case "as to every material fact necessary to establish its cause of action." *See City of Bellaire v. Sewell*, 426 S.W.3d 116, 120 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (citing *Maximum Med. Improvement, Inc. v. County of Dallas*, 272 S.W.3d 832, 835 (Tex. App.—Dallas 2008, no pet.)) (other citations omitted).

In response to the Taxing Units' traditional motion, Heritage asserted it did not receive notice of appraisal as required by Section 25.19 and the failure to receive that notice of appraisal rebutted the presumption found in Section 33.47(a).

Heritage filed four no-evidence and traditional motions for summary judgments. In its first two motions, Heritage argued that the Taxing Units did not add the previously-omitted property as required by Section 25.21(a); therefore, the Taxing Units could not prevail on their suit to recover delinquent taxes. *See* Tex. Tax Code Ann. § 25.21(a) (West, Westlaw through 2015 R.S.). Heritage's third and fourth motions also relied on the Section 25.21(a) argument and added that the Taxing Units failed to provide notice of appraised value pursuant to Section 25.19, thus depriving Heritage of due process.[1] *See id.*

In its response to Heritage's motions for summary judgment, the Taxing Units urged they complied with Sections 25.21(a) and 25.19 and Heritage was afforded due process because it could have filed a protest pursuant to Texas Tax Code Sections 41.44 and 41.411. *See id.*

### III. ANALYSIS

The chief appraiser's listing of all taxable property and its appraised value constitutes the tax roll. *See* Tex. Tax Code Ann. § 25.01 (West, Westlaw through 2015 R.S.). It is the duty of the chief appraiser to prepare and certify to the assessor for each taxing unit the appraisal rolls listing property subject to taxation. *See id.* § 26.01 (West, Westlaw through 2015 R.S.). The appraisal roll, including

---

[1] Section 25.21(a) provides: "If the chief appraiser discovers that . . . personal property was omitted from an appraisal roll in one of the two preceding years, he shall appraise the property as of January 1 of each year that it was omitted and enter the property and its appraised value in the appraisal records." Tex. Tax Code Ann. § 25.21. Section 25.19(a) provides generally that the chief appraiser must deliver notice of appraised value for property other than a single-family resident by May 1. *See* Tex. Tax Code Ann. § 25.19(a).

5

the amounts of tax, constitutes the taxing unit's tax roll. *See id*. § 25.24 (West, Westlaw through 2015 R.S.). After the chief appraiser certifies the appraisal roll, the taxing unit then prepares and mails a tax bill to each person whose name is listed on the tax roll. *See id*. § 31.01 (West, Westlaw through 2015 R.S.). At any time a tax becomes delinquent, a taxing unit may file suit to collect the tax. *See id*. §§ 33.41, 33.43 (West, Westlaw through 2015 R.S.). Because collection of a tax constitutes deprivation of property, the taxing unit must afford the taxpayer due process of law. *McKesson Corp. v. Div. of Alcoholic Beverages & Tobacco, Dept. of Bus. Regulation of Fla.*, 496 U.S. 18, 36–7, 110 S.Ct. 2238, 2250–51, 110 L.Ed.2d 17 (1990).

In a suit to collect delinquent taxes, Section § 33.47(a) provides:

> [T]he taxing unit's current tax roll and delinquent tax roll or certified copies of the entries showing the property and the amount of the tax and penalties imposed and interest accrued constitute prima facie evidence that each person charged with a duty relating to the imposition of the tax has complied with all requirements of law and that the amount of tax alleged to be delinquent against the property and the amount of penalties and interest due on that tax as listed are the correct amounts.

Tex. Tax Code Ann. § 33.47(a).

Where a taxing unit sues to recover delinquent taxes, Section 42.09 sets forth the exclusive remedies for the property owner:

> (a)  Except as provided by Subsection (b) of this section, procedures prescribed by this title for adjudication of the grounds of protest authorized by this title are exclusive, and a property owner may not raise any of those grounds:
>
>> (1)   in defense to a suit to enforce collection of delinquent taxes; or
>>
>> (2)   as a basis of a claim for relief in a suit by the property owner to arrest or prevent the tax collection process or to obtain a refund of taxes paid.

(b)  A person against whom a suit to collect a delinquent property tax is filed may plead as an affirmative defense:

> (1) . . . that the defendant did not own the property on which the tax was imposed on January 1 of the year for which the tax was imposed; or

> (2) . . . that the property was not located within the boundaries of the taxing unit seeking to foreclose the lien on January 1 of the year for which the tax was imposed.

*Id*. § 42.09 (West, Westlaw through 2015 R.S.).

The grounds of protest referred to in Section 42.09(a) are found in Sections 41.411 and 41.44.  *See id*. §§ 41.411, 41.44.  Section 41.411 provides:

(a)  A property owner is entitled to protest before the appraisal review board *the failure of the chief appraiser or the appraisal review board to provide or deliver any notice* to which the property owner is entitled.

(b)  If failure to provide or deliver the notice is established, the appraisal review board shall determine a protest made by the property owner on any other grounds of protest authorized by this title relating to the property to which the notice applies.

(c)  A property owner who protests as provided by this section must comply with the payment requirements of Section 41.4115 or the property owner forfeits the property owner's right to a final determination of the protest.

*Id*. § 41.411 (emphasis added).

Section 41.44(a)(2) requires that a property owner must file a written notice of protest with the appraisal review board "before June 1 or not later than the 30th day after the date that notice was delivered to the property owner as provided by Section 25.19 . . . whichever is later."  *Id*. § 41.44(a)(2) (West, Westlaw through 2015 R.S.).  Section 41.44(c-3) also provides the property owner a further opportunity for protest:

Notwithstanding Subsection (c), a property owner who files a protest under Section 41.411 on or after the date the taxes on the property to which the notice applies become delinquent, but not later than the 125th day after the property owner, in the protest filed, claims to have first received written notice of the taxes in question, is entitled to a hearing solely on the issue of whether one or more taxing units timely delivered a tax bill.

*Id*. § 41.44(c-3) (West, Westlaw through 2015 R.S.).

In the case before us, the Taxing Units introduced the tax records described in Section 33.47(a), thereby creating a rebuttable presumption that the taxes were due, delinquent, and unpaid. *See City of Bellaire*, 426 S.W.3d at 120. The burden then shifted to Heritage to proffer competent summary judgment evidence that it paid the taxes, did not own the property, or assert other applicable defenses. *See id*.

In its response to the Taxing Units' motion for summary judgment, Heritage argued it did not receive notice of the appraised value pursuant to Section 25.19. Heritage contended that, because it did not receive notice of appraisal, the Taxing Units had not "complied with the law," the presumption of Section 33.47(a) did not attach and the Taxing Units did not conclusively establish their claim for delinquent taxes. We disagree because it is undisputed that Heritage received the tax bill in 2007 and was required to exhaust its administrative remedies in order to raise this issue to defeat a summary judgment.

Section 25.19 requires the chief appraiser to provide notice of appraised value. Tex. Tax Code Ann. § 25.19. In addition, Section 41.411(a) provides that a property owner may protest "the failure of the chief appraiser or the appraisal review board to provide or deliver any notice to which he property owner is entitled." *Id*. 41.411(a). If the property owner is dissatisfied with the review board's decision of his protest, Section 42.01 provides that the property owner may

8

seek judicial review of the order. *See id*. § 42.01(a)(1)(A). Those administrative procedures established for challenging matters associated with ad valorem taxation, such as valuation and notice, are exclusive and must be exhausted before the property owner can seek judicial review. *See id*. § 42.09. In particular, as quoted above, Section 42.09(a) states that a property owner may not raise any of the grounds of protest in a defense to a suit to enforce collection of delinquent taxes. *See id*. § 42.09(a)(1); *Waobikeze v. Fort Bend County*, No. 01-13-00181-CV, 2014 WL 4345085, at *2 (Tex. App—Houston [1st Dist.] Aug. 29, 2014, no pet.) (mem. op.) (concluding that a taxpayer's failure to protest determination of appraised value pursuant to statutory scheme precludes due process attack regarding tax assessments).

The failure to exhaust the exclusive administrative procedures of the Tax Code precludes courts from reviewing complaints associated with taxation issues and "deprives the property owner of the right to raise such protest as a defense against a suit to enforce collection of delinquent taxes." *Waobikeze*, 2014 WL 4345085, at *3 (citing *Nevada Gold & Silver, Inc. v. Andrews Indep. Sch. Dist.*, 225 S.W.3d 68, 76 (Tex. App.—El Paso 2005, no pet); *Denton Central Appraisal Dist. v. CIT Leasing Corp.*, 115 S.W.3d 261, 265 (Tex. App.—Dallas 2003, pet. denied), *cert. denied*, 125 S.Ct. 106, 543 U.S. 869, 160 L.Ed.2d 115 (2004)) (holding that a taxpayer must comply with the Tax Code's protest procedures, including a situation wherein the taxpayer alleged it was not provided notice of appraised value pursuant to Section 25.19 of the Tax Code).

Heritage could have protested its claims, but there is no evidence in the record that it did so. Because Heritage failed to address its omitted property and lack-of-notice claims within the administrative framework, it may not raise these issues to defeat the Taxing Units' motion for summary judgment. *See* Tex. Tax

9

Code Ann. § 42.09; *Cameron Appraisal Dist. v. Rourk*, 194 S.W.3d 501, 501 (Tex. 2006) (concluding taxpayer's failure to operate within administrative framework "deprives the courts of jurisdiction to decide most matters relating to ad valorem taxes.") (citing *Matagorda Cnty. Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 331 (Tex. 2005) (other citations omitted); *MAG-T, L.P. v. Travis Cent. Appraisal Dist.*, 161 S.W.3d 617, 630–32 (Tex. App.—Austin 2005, pet. denied) (holding that Sections 41.41 and 41.411 are the exclusive remedies available to the taxpayer to challenge taxing authority action, including notice required under Section 25.19)).

Additionally, it is undisputed that Heritage received the actual tax bill in December 2007.[2]  Under Section 31.04(a-1), the 2004 taxes would not have become delinquent until February 1, 2009.  *See* Tex. Tax Code Ann. § 31.04(a-1) (West, Westlaw through 2015 R.S.)[3]  Therefore, Heritage would have had until January 31, 2008 to exhaust administrative remedies under Section 41.411.  *See id.* § 41.411.  Because the Tax Code provided Heritage the opportunity to be heard, its lack-of-due-process claim is without support.  To adopt the argument Heritage advances "would defeat the entire tax scheme the code sets out for protesting and appealing actions of the taxing authorities."  *See MAG-T*, 161 S.W.3d at 632

---

[2]  The record also reflects that Heritage relied on the Taxing Units' answers to requests for admission where the Taxing Units admitted:  the omitted property was added to the appraisal records in December 2006; and Heritage protested the addition of omitted property, indicating Heritage had knowledge of the property being added at some point on or after December 2006. There was a hearing on May 15, 2007, the appraisal review board issued its order determining the protest on that date, and the Taxing Units added the omitted property to the tax rolls on the same date.  The record does not reflect an attempt by Heritage to appeal the determination of the appraisal review board.

[3]  Section 31.04(a-1) provides "If a tax bill is mailed that includes taxes for one or more preceding tax years because the property was erroneously omitted from the tax roll in those tax years, the delinquency date provided by Section 31.02 is postponed to February 1 of the first year that will provide a period of at least 180 days after the date the tax bill is mailed in which to pay the taxes before they become delinquent."  Tex. Tax Code Ann. § 31.04(a-1).

(concluding taxpayer received due process when afforded an opportunity to protest defective notice); *Dan's Big & Tall Shop, Inc. v. County of Dallas*, 160 S.W.3d 307, 312 (Tex. App.—Dallas 2005, pet. denied) (holding taxpayer received actual notice from the taxing authority when it received the tax bill and taxpayer forfeits protest rights if it does not comply with the provisions of the Tax Code).

Heritage claimed its situation fell within a "gap" which precluded it from filing a written protest, relying on *Industrial Communications, Inc. v. Ward County Appraisal Dist.*, 296 S.W.3d 707, 715–717 (Tex. App.—El Paso 2009, pet. denied), in which the court concluded that certain provisions of the Tax Code failed to provide adequate due process protection for a taxpayer who does not receive notice in time to file a protest within the parameters of Section 41.411. *Industrial* involved a taxpayer's claim that it did not receive notice of appraised value pursuant to the Tax Code and, therefore, it was prevented from exhausting administrative remedies. *Id.*, 296 S.W.3d at 712. However, the *Industrial* court considered a pre-2008 version of the Tax Code which, under the facts of that case, precluded the taxpayer from pursuing remedies it had regarding its lack of notice of the tax bill upon which the taxing authority filed its suit for delinquency. *Id.*, 296 S.W.3d at 714–717. The facts considered in *Industrial* differ from those at issue here for two reasons: (1) *Industrial* involved a pre-2008 version of the Tax Code; and (2) the taxpayer did not receive notice of the tax bill. *See id*. Here, the record reflects that Heritage received the tax bill in May of 2007, the Taxing Units filed suit on April 7, 2008, and Heritage was served.

Heritage does not dispute it received notice of the taxes. Thus, without deciding whether Heritage received notice of appraised value, Section 41.44(c-3) provided an opportunity for Heritage to file a written protest of its appraisal and notice complaints not later than the 125th day after it received notice of the taxes.

11

*See* Tex. Tax Code Ann. 41.44(c-3). The record does not contain evidence that Heritage availed itself of the exclusive remedies set forth in the Tax Code. *See Rio Valley, LLC v. City of El Paso*, 331 S.W.3d 482, 489 (Tex. App.—El Paso 2014, no pet.) (holding effective date of Section 41.44(c-3), January 1, 2008, removed the "gap" of the prior version of the Tax Code and property owner is required to exhaust administrative remedies).

In sum, it is undisputed that Heritage did not exhaust the administrative remedies set forth in the Tax Code. After Heritage received actual notice of the 2004 tax bill or of the suit to recover delinquent taxes, it was required to exhaust administrative remedies before asserting its lack-of-notice as a response to the Taxing Units' motion for summary judgment. *See Morris v. Houston Independent School Dist.*, 388 S.W.3d 310, 313 (Tex. 2012) (per curiam) (holding that Section 42.09 established a detailed set of exclusive procedures which property owners must exhaust before raising grounds of protest in defense of the suit to collect delinquent taxes); *Thames Shipyard & Repair Co. v. Galveston Central Appraisal Dist.*, No. 14-11-00691-CV, 2011 WL 5042836, at *3 (Tex. App.—Houston [14th Dist.] Oct. 25, 2013, no pet.) (per curiam) (mem. op.) (holding that, even though notice did not allow taxpayer thirty days to protest under Section 41.44, taxpayer was required to exhaust administrative remedies pursuant to Section 41.411); *Public, Inc. v. County of Galveston*, 264 S.W.3d 338, 342–33 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (holding trial court lacked jurisdiction to consider notice complaints where taxpayer did not follow administrative procedures).

We conclude that Heritage did not proffer evidence contesting the presumption created by Section 33.47 and the Taxing Units conclusively established they were entitled to summary judgment. The trial court properly

granted the Taxing Units' traditional motion for summary judgment.

Additionally, because we hold the trial court did not err in granting the Taxing Units' motion for summary judgment, we need not address the merits of Heritage's motions for summary judgment. Even if meritorious, none of the arguments raised in Heritage's motions for summary judgment entitle it to judgment because Heritage did not exhaust the exclusive administrative remedies in the Tax Code. *See ABT Galveston Ltd. P'ship v. Galveston Cent. Appraisal Dist.*, 137 S.W.3d 146, 152 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding the taxpayer's failure to pursue and exhaust administrative remedies deprives the trial court of jurisdiction).

We overrule Heritage's sole issue and affirm the judgment of the trial court.


/s/     John Donovan
        Justice


Panel consists of Justices Christopher, Donovan, and Wise.